## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THANG DUC NGUYEN, Derivatively on Behalf of Nominal Defendant 3D SYSTEMS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> VYOMESH I. JOSHI, TODD A. BOOTH, JEFFREY A. GRAVES, WAYNE PENSKY, JAGTAR NARULA, MALISSIA R. CLINTON, WILLIAM E. CURRAN, THOMAS W. ERICKSON, CHARLES W. HULL, WILLIAM D. HUMES, JIM D. KEVER, CHARLES G. MCCLURE, JR., KEVIN S. MOORE, VASANT PADMANABHAN, JOHN J. TRACY, and JEFFREY WADSWORTH, <br><br> Defendants, <br><br> and <br><br> 3D SYSTEMS CORPORATION, <br><br> Nominal Defendant. | Case No. 1:21-cv-3389 <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |

Plaintiff Thang Duc Nguyen ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, 3D Systems Corporation ("3D Systems" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and contribution for Violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by 3D Systems

with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I. NATURE AND SUMMARY OF THE ACTION

1. 3D Systems provides comprehensive 3D printing and digital manufacturing solutions, including 3D printers for plastics and metals, materials, software, on-demand manufacturing services, and digital design tools.

2. In interim reports throughout fiscal 2020, the Company claimed that its disclosure controls and procedures were effective and that there were no material changes in its internal control over financial reporting. However, on March 1, 2021, 3D Systems disclosed that there were material weaknesses in its internal controls and that it could not timely file its annual report for fiscal 2020.

3. On this news, the Company's stock price fell $7.62, or more than 19.6%, to close at $31.17 per share on March 2, 2021, on unusually heavy trading volume.

4. On March 5, 2021, 3D Systems revealed that the there were material weaknesses related to (1) "certain non-standard contracts and non-standard contract terms" and (2) "the review of internally prepared reports and analyses utilized in the financial closing process."

5. On this news, the Company's stock price fell $0.88, or 3.43%, to close at $24.75 per share on March 5, 2021, on unusually heavy trading volume.

6. These revelations precipitated the filing of a securities class action in this District against 3D Systems and certain of the defendants named herein, captioned *Kehoe v. 3D Systems Corporation, et al.*, Case No. 21-cv-01920 (the "Securities Class Action").

7. At least half of the Company's current Board could not disinterestedly and independently respond to a litigation demand in connection with the misleading representations

because, among other things, the Audit Committee knew or recklessly ignored the deficiencies in 3D Systems' internal control over financial reporting.  As a result, a majority of the Board could not disinterestedly investigate whether their conduct constituted breaches of fiduciary duties under Delaware law.

## II.     JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: contribution for violations of Section 10(b) of the Exchange Act.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## III.    PARTIES

**Plaintiff**

10.     Plaintiff Thang Duc Nguyen purchased shares of 3D Systems stock in February 2014 and has continuously owned his 3D Systems stock since that date.  He currently owns 137 shares.

**Nominal Defendant**

11.     Nominal Defendant 3D Systems is a Delaware corporation with its principal executive offices located at 333 Three D Systems Circle, Rock Hill, South Carolina 29730.  The Company's common stock trades on the New York Stock Exchange under the symbol "DDD."

**Defendants**

12.     Defendant Vyomesh I. Joshi ("Joshi") served as the Chief Executive Officer ("CEO") of the Company from April 2016 to May 26, 2020.  He is named as a defendant in the Securities Class Action.

13.     Defendant Todd A. Booth ("Booth") served as the Chief Financial Officer ("CFO") of the Company from September 2019 to June 2020.  He is named as a defendant in the Securities Class Action.

14.     Defendant Jeffrey A. Graves ("Graves") has served as the CEO and a director of the Company since May 26, 2020.  He is named as a defendant in the Securities Class Action.

15.     Defendant Wayne Pensky ("Pensky") was the interim CFO of the Company form June 2020 to September 14, 2020.  He is named as a defendant in the Securities Class Action.

16.     Defendant Jagtar Narula ("Narula") has served as the CFO of the Company since September 14, 2020.  He is named as a defendant in the Securities Class Action.

17.     Defendant Malissia R. Clinton ("Clinton") has served as a director of 3D Systems since 2019.

18.     Defendant William E. Curran ("Curran") has served as a director of 3D Systems since 2008.  He is Chair of the Audit Committee.

19.     Defendant Thomas W. Erickson ("Erickson") has served as a director of 3D Systems since 2015.

20.     Defendant Charles W. Hull ("Hull") is a founder of 3D Systems.  He has served as a director of 3D Systems since 1993, as Chief Technology Officer ("CTO") of the Company since 1997, and as Executive Vice President since 2000.

21.     Defendant William D. Humes ("Humes") has served as a director of 3D Systems since 2014.  He is a member of the Audit Committee.

4

22.     Defendant Jim D. Kever ("Kever") has served as a director of 3D Systems since 1996.

23.     Defendant Charles G. McClure, Jr. ("McClure") has served as a director of 3D Systems since 2017.

24.     Defendant Kevin S. Moore ("Moore") has served as a director of 3D Systems since 1999.  He is a member of the Audit Committee.

25.     Defendant Vasant Padmanabhan ("Padmanabhan") has served as a director of 3D Systems since 2020.

26.     Defendant John J. Tracy ("Tracy") has served as a director of 3D Systems since 2017.

27.     Defendant Jeffrey Wadsworth ("Wadsworth") has served as a director of 3D Systems since 2017.

28.     Defendants Joshi, Booth, Graves, Pensky, Narula, Clinton, Curran, Erickson, Hull, Humes, Kever, McClure, Moore, Padmanabhan, Tracy, and Wadsworth are sometimes referred to hereinafter as the "Individual Defendants."

## IV.   DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.     Fiduciary Duties

29.     By reason of their positions as officers, directors, and/or fiduciaries of 3D Systems and because of their ability to control the business and corporate affairs of 3D Systems, at all relevant times, the Individual Defendants owed 3D Systems and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage 3D Systems in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of 3D Systems and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal

interest or benefit. Each director and officer of the Company owes to 3D Systems and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30. The Individual Defendants, because of their positions of control and authority as directors and/or officers of 3D Systems, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with 3D Systems, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

31. To discharge their duties, the officers and directors of 3D Systems were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of 3D Systems were required to, among other things:

> (a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

> (b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

> (c) Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

> (d) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**B.    Audit Committee Charter**

32. The Audit Committee charter provides that its members shall:

assist the Board in fulfilling its responsibility for oversight of the quality and integrity of the accounting and reporting practices of the Company, the adequacy of the Company's financial and accounting policies, the qualifications and independence of the firm of independent registered public accountants engaged to prepare or issue an audit report on the financial statements of the Company and a report on the internal controls of the Company (the "independent auditor"), performance of the internal auditor and the Company's processes to manage financial risk and compliance with significant applicable legal, ethical and regulatory requirements.

33.     Specifically regarding internal controls, the Audit Committee charter states that members must:

10. In connection with each periodic report of the Company, review

a. Management's disclosure to the Committee and the independent auditor under Section 302 of the Sarbanes-Oxley Act.

b. Any disclosure exceptions to the contents of the Chief Executive Officer's and the Chief Financial Officer's certificates to be filed under Sections 302 and 906 of the Sarbanes-Oxley Act.

*      *      *

Internal Controls

19. As required by the Sarbanes-Oxley Act or other applicable rules or regulations, consider and review with management of the Company, the independent auditor and the internal auditor:

a. The Company's and the independent auditor's assessment of the effectiveness of its internal controls, including computerized information system controls and security.

b. Any related significant findings and recommendations of the independent public accountants and the internal auditor together with management's responses thereto.

20. Review with management of the Company and the independent auditor at the completion of the annual audit:

a. The Company's annual financial statements and related footnotes.

b. The independent auditor's audit of the financial statements and its report thereon.

c. The independent auditor's report on internal controls.

d. Any significant changes required in the independent auditor's audit plan.

e. Any serious difficulties or disputes with management of the Company encountered during the course of the audit, including any restrictions on the scope of their work or access to required information.

f. Significant findings during the year and management's responses thereto.

g. Other matters related to the conduct of the audit which are to be communicated to the Committee under generally accepted auditing standards.

## V.    SUBSTANTIVE ALLEGATIONS

34.    3D Systems provides comprehensive 3D printing and digital manufacturing solutions, including 3D printers for plastics and metals, materials, software, on-demand manufacturing services, and digital design tools.

### A.    The Individual Defendants Cause the Company to Issue Materially Misleading Statements

35.    On May 6, 2020, after the market closed, the Individual Defendants caused 3D Systems to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2020 (the "1Q20 10-Q").  It stated, in relevant part:[1]

**Item 4. Controls and Procedures.**

*Evaluation of disclosure controls and procedures*

***As of March 31, 2020, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures*** (as defined in Rules 13a-15(e) and 15d15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) pursuant to Rules 13a-15 and 15d-15 under the Exchange Act. These controls and procedures were designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, in a manner to allow timely decisions regarding

---

[1] Unless otherwise stated, all emphasis in bold and italics is added hereinafter.

8

required disclosures. ***Based on this evaluation, management has concluded that our disclosure controls and procedures were effective as of March 31, 2020.***

**Changes in Internal Controls over Financial Reporting**

There were ***no material changes in our internal controls over financial reporting*** during the period covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

36.     Attached to the 1Q20 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Joshi and Booth attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

37.     On August 5, 2020, after the market closed, the Individual Defendants caused 3D Systems to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2020 (the "2Q20 10-Q").  It stated, in relevant part:

**Item 4. Controls and Procedures.**

*Evaluation of disclosure controls and procedures*

***As of June 30, 2020, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and interim Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures*** (as defined in Rules 13a15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) pursuant to Rules 13a-15 and 15d-15 under the Exchange Act. These controls and procedures were designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to our management, including our Chief Executive Officer and interim Chief Financial Officer, in a manner to allow timely decisions regarding required disclosures. ***Based on this evaluation, management has concluded that our disclosure controls and procedures were effective as of June 30, 2020.***

**Changes in Internal Controls over Financial Reporting**

There were ***no material changes in our internal controls over financial reporting*** during the period covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

38.     Attached to the 2Q20 10-Q were SOX certifications signed by defendants Graves and Pensky attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

39.     On November 5, 2020, after the market closed, the Individual Defendants caused 3D Systems to file its quarterly report for the period ended September 30, 2020 (the "3Q20 10-Q"). It stated, in relevant part:

**Item 4. Controls and Procedures.**

*Evaluation of disclosure controls and procedures*

***As of September 30, 2020, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures*** (as defined in Rules 13a15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) pursuant to Rules 13a-15 and 15d-15 under the Exchange Act. These controls and procedures were designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, in a manner to allow timely decisions regarding required disclosures. ***Based on this evaluation, management has concluded that our disclosure controls and procedures were effective as of September 30, 2020.***

**Changes in Internal Controls over Financial Reporting**

There were ***no material changes in our internal controls over financial reporting*** during the period covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

40.     Attached to the 3Q20 10-Q were SOX certifications signed by defendants Graves and Narula attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

41.     The above statements in ¶¶ 35-40 were materially misleading because they failed to disclose that there were material weaknesses in the Company's internal controls over financial reporting.

**B.     The Truth Begins to Emerge**

42.     On March 1, 2021, 3D Systems announced a delay in filing its annual report on Form 10-K for the period ended December 31, 2020.  According to the Company, "the delay in filing is primarily related to the presentation of cash flows associated with the divestiture process for its Cimatron and GibbsCam software businesses."   3D Systems also revealed that it had identified "certain internal control deficiencies" and "will report material weaknesses in internal controls in its fiscal 2020 Annual Report on Form 10-K."   Specifically, in a press release, the Company stated:

> 3D Systems Corporation (NYSE:DDD) announced today that it will ***delay filing its Annual Report on Form 10-K for the fiscal year ended December 31, 2020.*** The company will file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission, which extends the deadline to file the Form 10-K. The company confirms its plans to hold a fourth quarter and full year 2020 conference call on Tuesday, March 2, 2021.
>
> ***The company noted the delay in filing is primarily related to the presentation of cash flows associated with the divestiture process for its Cimatron and GibbsCam software businesses.*** Based on preliminary analysis, the company believes that any financial impact resulting from this review is accounted for within its fourth quarter and full year 2020 results presented below. The delayed filing has no impact on the operations of the company's business. 3D Systems CEO, Dr. Jeff Graves commented "While we were greatly disappointed that we were not able to conclude the audit in a timely fashion, we are pleased to provide our preliminary financial results for the fourth quarter and full year 2020, and look forward to discussing these results and our progress in positioning 3D Systems for sustained profitable growth on our conference call tomorrow."
>
> *          *          *
>
> ***In the course of preparing its financial results for the fourth quarter and full year 2020, the company discovered certain internal control deficiencies. As a result, the company will report material weaknesses in internal controls in its fiscal 2020 Annual Report on Form 10-K.*** As of the date of this release, there have been no

material misstatements identified in prior year financial statements as a result of these deficiencies, and the company expects to file its 2020 Annual Report on Form 10-K no later than March 16, 2021. Please refer to the upcoming 2020 Annual Report on Form 10-K for more information.

43.     On March 2, 2021, 3D Systems filed a notification of inability to timely file with the SEC on Form NT 10-K for the reasons stated in the press release.

44.     On this news, the Company's stock price fell $7.62, or more than 19.6%, to close at $31.17 per share on March 2, 2021, on unusually heavy trading volume.

45.     On March 5, 2021, 3D Systems filed its 2020 10-K with the SEC in which it identified two material weaknesses in its internal control over financial reporting.  The Company also stated that these weaknesses resulted in certain "out-of-period adjustments that were recorded in the quarter ended December 31, 2020."  Specifically, it stated, in relevant part:

> During the preparation and audit of our financial statements for the period ended December 31, 2020, we and our independent registered public accounting firm ***identified two material weaknesses in our internal control over financial reporting related to a lack of certain controls, or improper execution of designed control procedures, (1) for certain non-standard contracts and non-standard contract terms and (2) over the review of internally prepared reports and analyses utilized in the financial closing process.*** These control deficiencies were partially related to employee turnover, resulting in a temporary shortage of personnel with appropriate knowledge or skills to perform an effective review during our financial statement close process. In addition, certain control deficiencies related to the completeness and review of transactions that were infrequent in nature.
>
> ***While these control deficiencies did not result in material misstatements of our annual or interim consolidated financial statements, they did result in immaterial out-of-period adjustments that were recorded in the quarter ended December 31, 2020.*** Material weaknesses create a reasonable possibility that a material misstatement of account balances or disclosures in annual or interim consolidated financial statements may not be prevented or detected in a timely manner. Accordingly, our management concluded that the control deficiencies represent material weaknesses in our internal control over financial reporting and, therefore, our internal control over financial reporting was not effective as of December 31, 2020.

46.     On this news, the Company's stock price fell $0.88, or 3.43%, to close at $24.75 per share on March 5, 2021, on unusually heavy trading volume.

## VI.   DAMAGES TO THE COMPANY

47.     As a direct and proximate result of the Individual Defendants' conduct, 3D Systems has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

a)      Expenses to remediate the material weaknesses in the Company's internal control over financial reporting;

b)      Any funds paid to settle the Securities Class Action; and

c)      Costs incurred from compensation and benefits paid to the defendants who have breached their duties to 3D Systems.

48.     In addition, 3D Systems' business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

49.     The actions complained of herein have irreparably damaged 3D Systems' corporate image and goodwill.  For at least the foreseeable future, 3D Systems will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that 3D Systems' ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

50.     Plaintiff brings this action derivatively in the right and for the benefit of 3D Systems to redress injuries suffered, and to be suffered, by 3D Systems as a direct result of breaches of fiduciary duty by the Individual Defendants and contribution for violations of Section 10(b) of the Exchange Act.  3D Systems is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

51.     Plaintiff will adequately and fairly represent the interests of 3D Systems in enforcing and prosecuting its rights.

52.     Plaintiff has continuously been a shareholder of 3D Systems at times relevant to the wrongdoing complained of and is a current 3D Systems shareholder.

53.     When this action was filed, 3D Systems' Board of Directors consisted of defendants Graves, Clinton, Curran, Erickson, Hull, Humes, Kever, McClure, Moore, Padmanabhan, Tracy, and Wadsworth.  Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

54.     Graves is the Company's CEO, and therefore is not independent under NYSE listing rules.  As an employee, Graves derives substantially all of his income from his employment with 3D Systems, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  Moreover, as CEO and as alleged herein, Graves personally issued the misleading statements alleged herein and faces a substantial risk of liability in the Securities Class Action.  As a result, Graves would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

55.     Hull is the founder and CTO of 3D Systems, and therefore is not independent under NYSE listing rules.  As an employee, Hull derives substantially all of his income from his employment with 3D Systems, thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  As a result, Hull would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

56.     Curran, Humes, and Moore served as the members of the Audit Committee at relevant times.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations.  In their capacities as Audit Committee members, Curran, Humes, and Moore reviewed and approved the disclosures regarding the Company's internal control over financial reporting and 3D Systems' financial statements.  As alleged herein, Curran, Humes, and Moore failed to ensure the integrity of the Company's internal controls, allowing the materially misleading statements to be disseminated in 3D Systems' SEC filings and other disclosures.  Thus, Curran, Humes, and Moore breached their fiduciary duties and are not disinterested, and demand is excused as to them.

57.     Padmanabhan is an executive officer of Smith+Nephew, a company that has purchased software and on-demand services in each of fiscal years 2018, 2019, and 2020.  As a result, he is not independent and demand is excused as to him.

58.     Each of Graves, Clinton, Curran, Erickson, Hull, Humes, Kever, McClure, Moore, Padmanabhan, Tracy, and Wadsworth by their roles as directors were charged with oversight of the Company's internal controls and, throughout 2020 consciously failed to monitor and/or oversee the operation of the company's system of internal controls.  As a result, Graves, Clinton, Curran, Erickson, Hull, Humes, Kever, McClure, Moore, Padmanabhan, Tracy, and Wadsworth face a substantial likelihood of liability and demand is excused as to them.

## COUNT I

**Against Defendants Joshi, Booth, Graves, Pensky, and Narula for Breach of Fiduciary Duty**

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

15

60.     Defendants Joshi, Booth, Braves, Pensky, and Narula each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of 3D Systems' business and affairs, particularly with respect to issues as fundamental as public disclosures.

61.     The conduct by defendants Joshi, Booth, Braves, Pensky, and Narula set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  Defendants Joshi, Booth, Braves, Pensky, and Narula intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of 3D Systems.

62.     In breach of their fiduciary duties owed to 3D Systems, defendants Joshi, Booth, Braves, Pensky, and Narula willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

63.     In particular, defendants Joshi, Booth, Braves, Pensky, and Narula knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

64.     As a direct and proximate result of the breaches of their fiduciary obligations by defendants Joshi, Booth, Braves, Pensky, and Narula, 3D Systems has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

<u>**COUNT II**</u>

**(Against Defendants Joshi, Booth, Braves, Pensky, and Narula for Contribution
For Violations of Sections 10(b) and 21D of the Exchange Act)**

65.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

66.     The conduct of Defendants Joshi, Booth, Braves, Pensky, and Narula, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

67.     3D Systems is named as a defendant in related securities fraud lawsuit that allege and assert claims arising under § 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If 3D Systems is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

68.     As officers, directors and otherwise, Defendants Joshi, Booth, Braves, Pensky, and Narula had the power or ability to, and did, control or influence, either directly or indirectly, 3D Systems' general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

69.     Defendants Joshi, Booth, Braves, Pensky, and Narula are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

70.     Defendants Joshi, Booth, Braves, Pensky, and Narula have damaged the Company and are liable to the Company for contribution.

71.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

<u>**COUNT III**</u>

**Against the Defendants Clinton, Curran, Erickson, Hull, Humes, Kever, McClure, Moore, Padmanabhan, Tracy, and Wadsworth for Breach of Fiduciary Duty**

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     These Defendants each owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of 3D Systems' business and affairs, particularly with respect to issues as fundamental as public disclosures.

74.     These Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  These Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of 3D Systems.

75.     In breach of their fiduciary duties owed to 3D Systems, these Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

76.     In particular, these Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

77.     As a direct and proximate result of these Defendants' breaches of their fiduciary obligations, 3D Systems has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in

the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of 3D Systems, demands judgment as follows:

A.      Declaring that plaintiff may maintain this action on behalf of 3D Systems and that plaintiff is an adequate representative of the Company;

B.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.      Declaring that Defendants have breached their fiduciary duties to 3D Systems;

D.      Directing 3D Systems to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect 3D Systems and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.      a proposal to strengthen the Company's controls over financial reporting;

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to strengthen 3D Systems' oversight of its disclosure procedures;

4.      a provision to control insider transactions; and

5.      a provision to permit the stockholders of 3D Systems to nominate at least three candidates for election to the Board;

E.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of 3D Systems has an effective remedy;

F.      Awarding to 3D Systems restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: June 15, 2021

By:   /s/Benjamin I. Sachs-Michaels
**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
712 Fifth Avenue, 31st Floor
New York, New York 10019
Telephone: (212) 935-7400
E-mail: bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
        prajesh@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Thang Duc Nguyen*

## **3D SYSTEMS CORPORATION VERIFICATION**

I, Thang Duc Nguyen, do hereby verify that I am a holder of common stock of 3D Systems

Corporation and was a holder of such common stock at the time of the wrongs complained of in

the foregoing Verified Shareholder Derivative Complaint (the "Complaint"). I have reviewed and

authorized the filing of the Complaint. All of the averments contained in the Complaint regarding

me are true and correct upon my personal knowledge, and with respect to the remainder of the

averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _____   6/14/2021

_____

Thang Duc Nguyen